## Commonwealth v. Rue (No. 1)

*Charles Eyer, Assistant District Attorney,* for plaintiff.

*Peter J. O'Malley* and *William R. Lee,* for defendant.

WILLIAMS, *P.J.,* November 16, 1977 — This matter is before us on a petition by the Commonwealth to extend time for trial beyond the 180-day

limit fixed by Pa.R.Crim.P. 1100. There are two issues before us: (1) From what date the 180 days is to be computed? (2) If this issue is determined unfavorably to the Commonwealth, do the circumstances present warrant the granting of the requested extension?

The facts which give rise to the first issue are as follows:

On March 21, 1977, a private complaint was filed before district justice Glenn Borger charging theft by deception. This complaint was dismissed May 14, 1977, by the issuing district justice, Glenn Borger, after objection to the complaint by defense counsel as defective. A second complaint was filed on May 14, 1977. Defendant argues that the 180 days must be calculated from March 21, 1977, the date the first complaint was filed. On the contrary, the Commonwealth's position is that the 180 days should be calculated from May 14, 1977, the date the second complaint was filed.

Pa.R.Crim.P. 150 provides: "(b) Substantive Defects: If a complaint, citation, summons or warrant contains a substantive defect, the defendant shall be discharged unless he waives the defect. Nothing in this rule shall prevent the filing of a *new complaint* or citation and the issuance of process in which the defect is corrected in a proper manner." (Emphasis supplied.)

This same issue was before President Judge Shughart in Commonwealth v. Braithwaite, 26 Cumberland 73, 74, 75 (1975), where Judge Shughart stated:

"Pa.R.Crim.P. 1100(a)(2) provides: Trial in a *court case* in which a written complaint is filed against the defendant after June 30, 1974 shall

commence no later than one hundred eighty (180) days from the date on which *the complaint* is filed." (Emphasis in original.)

"For the purpose of this provision, the term 'court case' must be construed to mean that chain of proceedings commencing with a complaint or by other means as elaborated in paragraph three of the comment to Rule 1100. A 'court case' may terminate in a number of ways including acquittal, nolle pros, quashing of an indictment, withdrawal of a complaint, and dismissal of charges by a district justice following a preliminary hearing. The latter *two of these possibilities occurred in the situation at* hand when the first three complaints were dismissed or withdrawn. Using this definition of 'court case,' it is clear that when Rule 1100(a)(2) refers to 'the complaint,' it means that specific complaint which instituted the proceedings leading to the trial in question. The trial here clearly arose from the fourth complaint. The fourth is the complaint on which the defendant was bound over for further proceedings and the only complaint which still breathes life, the others have been dismissed or withdrawn."

At the hearing on the Commonwealth's petition to extend the time for trial beyond the period of 180 days required by Pa.R.Crim.P. 1100, the presiding district justice, Glenn Borger, testified that he dismissed the first complaint on motion of defense counsel. The defense maintained that he did not and presented a transcript of the proceeding by a stenographer, who took down the testimony in shorthand and transcribed it.

The pertinent portions of the transcript are: Roger Karasek, Esq., appeared as a representative of the Commonwealth and read a letter from the

district attorney of Monroe County, authorizing him to appear in behalf of the Commonwealth, whereupon counsel for defendant objected on the grounds that only the court or the Attorney General could appoint a special prosecutor, whereupon the following colloquy took place.

"BY THE MAGISTRATE (addressing Attys. O'Malley and Lee): Do you understand the Complaint?

"BY ATTY. O'MALLEY: We understand, Mr. Borger, and would like to, in all due respect to the court, object to the complaint and object to the proceedings at this time on the basis that the complaint was improperly issued. The magistrate just read, on the last line of the complaint, that 'now, on this date, March 21, 1977, I certify the complaint has been properly sworn to and executed before me and that there is probable cause for the issuance of process.' I assume that that was signed by the magistrate on March 21, 1977, as so indicated. I direct the magistrate's attention, very respectfully, to the top of the complaint; that it was not approved by the district attorney's office until four days after you decided there was probable cause for the issuance of process and, in fact, you issued the complaint before there was approval from the district attorney's office.

"BY THE MAGISTRATE: Motion denied.

"BY ATTY. O'MALLEY: And since the complaint is defective, we object to the jurisdiction of these proceedings right now and ask that the charges be dismissed.

"BY ATTY. KARASEK: In any event, your honor, we have no objection, assuming you take the motion into consideration, to come back at a later date and have the hearing set up at that time so that the

formalities, if they have not been complied with, which I suggest they have, but if you feel they have not been, they can be properly complied with and a new hearing date can be set.

"BY ATTY. O'MALLEY: I'll agree to that.

"BY THE MAGISTRATE: You want a new complaint filed. I will have a new complaint filed and I will use a warrant.

"BY ATTY. KARASEK: You use whatever you want and if you use . . .

"BY THE MAGISTRATE: That is my prerogative, and I will execute that.

"BY ATTY. ZITO: Your honor, on behalf of Mr. Caponcello, prior to the time that you issue another complaint, may we have an opportunity to inspect this one, please.

"BY ATTY. O'MALLEY: Well, I would like to say this, if I may, Mr. Borger: You're on the record and you're also being taped by a certified stenographer. If this issuance of a warrant to compel Mr. Rue, I would like to have the record show that Mr. Rue has voluntarily appeared before this proceeding, and if his honor decides to issue a warrant in an attempt to incarcerate Mr. Rue as a punishment, I want to assure this court that if this man is taken into custody because of your threat right now, we intend to file a civil right's action against you in a Federal court, which you're not immune from that.

"BY THE MAGISTRATE: I am not.

"BY ATTY. O'MALLEY: Well I hope you don't penalize him for us standing up for his rights.

"BY THE MAGISTRATE: I am not and I have made that statement before.

"BY ATTY. ZITO: On behalf of Mr. Rue, we heard no threat from the court, your honor.

"BY THE MAGISTRATE: That is correct.

"BY ATTY. O'MALLEY: The record will speak for

itself and your honor's future actions will speak for themselves as well.

"BY THE MAGISTRATE: All right. We will have Mr. Caponcello file a new complaint.

"BY ATTY. KARASEK: Perhaps we can do that now.

"BY THE MAGISTRATE: Is the complaint being withdrawn?

"BY ATTY. O'MALLEY: I'd like to stay on the record. I'm not agreeing to any withdrawal of the complaint or a complaint being filed. I'm objecting to this complaint. Whatever the court wants to do is certainly up to the court."

This transcript shows: (1) That defendant did initially object to the complaint and moved for its dismissal. (2) That the district justice initally denied the motion to dismiss. (3) That defense counsel continued to object to the complaint. That he did not agree to its withdrawal or a new complaint issued. (4) That the district justice due to defendant's objection, dismissed at least by implication, the original complaint and stated a new complaint would be filed.

In our opinion defense counsel could not move in two different directions at the same time. He did move to dismiss the complaint. He continued to object to the form of the complaint. He did not agree to the filing of a new complaint. His position thus taken required positive action on the part of the district justice. He could not ignore the objection to the complaint and when he did decide that a new complaint be filed, he was ruling in conformity with Pa.R.Crim.P. 150 which allows such procedure.

The language employed by defense counsel cannot be interpreted as an objection to the dismissal of the complaint.

He stated: "I'd like to stay on the record. I'm not agreeing to any withdrawal of the complaint or a complaint being filed. *I'm objecting to this complaint.* Whatever the court wants to do, is certainly up to the court." (Emphasis supplied.)

There is nothing in this language which expressly or impliedly shows any objection to the dismissal of the original complaint. In fact, the district justice, in the end, did only what the defense counsel originally requested.

We think this case is somewhat similar in circumstances as are present in Commonwealth v. Mumich, 239 Pa. Superior Ct. 209, 361 A. 2d 359 (1976), where the majority opinion held that Rule 1100 should be computed from the time the second complaint was filed since defendant had not objected to the dismissal of the first complaint.

Since defense counsel moved to dismiss the complaint and continued to object to the complaint after the record shows that his motion was denied, and entered no objection to the dismissal of the complaint, we find that, excluding 61 days which it is stipulated must be charged to defendant's unavailability, the Commonwealth by starting trial before January 11, 1978, will have complied with Pa.R.Crim.P. 1100.

We see nothing in the record to indicate that the protracted proceedings before the justice of the peace between May 14, 1977, and November 10, 1977, indicates "any impropriety by the district attorney's office in this case to avoid the mandate of Rule 1100." Mumich, supra, page 361. Without a full transcript of the substantial number of hearings fixed by the district justice, we cannot determine if the district attorney made an unreasonable number of objections to questions propounded by

defense counsel, or whether defense counsel engaged in protracted cross-examination of a single witness, which district justice Borger testified lasted in the aggregate nine or ten hours.

## ORDER

And now, November 16, 1977, it is ordered that the Commonwealth by commencing trial by January 11, 1978, will satisfy Pa.R.Crim.P. 1100. It is further ordered that if trial is not commenced by January 11, 1978, that defendant be discharged.